This case is on appeal from the District Court Grant of Summary Judgment in favor of the Department of Justice. and a denial of Bahrampour's motion for partial summary judgment and his motion for injunctive relief. We ask the Court today to reverse the grant of summary judgment and to instead remand the case with instructions to grant Bahrampour's motion for partial summary judgment as well as his motion for injunctive relief and to remand the remaining issues that the District Court did not consider in its order. As a preliminary matter, it was a magistrate judge order that was adopted by the District Court. I have three main issues to address today. First, that the rules are unconstitutional as applied and therefore summary judgment is appropriate. Second, that the rules themselves are unconstitutional and therefore injunctive relief is appropriate. And finally, that the Court erred when it failed to address all of Bahrampour's claims. Counsel, could we just segment out the rules that you are challenging here today? Let's start with the bulk mail rule. Okay, with the bulk mail rule, because that rule has been changed, we are not seeking injunctive relief on that. I would like to clarify that at the beginning. That was an initial concern, but it appears the rule has been changed. So what are you seeking as to the bulk mail rule? With regard to the bulk mail rule, we seek either damages if the case, if you agree with the arguments in the briefing that the bulk mail rule was not clearly established, and I'm going to rely on the briefing for that in a short amount of time, or declaratory relief in that he received a one-year subscription, but not the one-year subscription that he had originally ordered. So what would the declaratory relief accomplish in that event to get that specific? That he would get the one-year subscription, specifically that he had ordered. So if I could focus the remaining of the time on White Dwarf and on Muscle Elegance. And the fourth magazine was Heavy Metal, and that has been dropped. So that clarifies what is before the Court. So beginning with White Dwarf, White Dwarf is unconstitutional as applied, and this is an area that seems to be missing from some of the Department of Corrections' briefing and didn't appear to be considered by the district court at all. And a consideration of the constitutionality of a prison regulation as applied is an independent consideration whether or not the rule itself is unconstitutional. So even if you agree, which we believe is incorrect, that the rule itself is constitutional, there's still a question as to whether it was constitutionally applied in this matter. So counsel for White Dwarf and Muscle Elegance was the same rule? No, they were different rules. Under White Dwarf the rule was the role-playing or similar fantasy games, and under Muscle Elegance it was the sexually explicit material. Well, what's wrong with the grounds or the reasons that the Department of Corrections put forward as reasons why these things are harmful in the prison environment? Well, for White Dwarf they had said that a large space was needed to play a role-playing game. Well, I'm not as interested in the role-playing game as I am in the sexually explicit stuff. Okay. I don't have those before me, but my recollection was that with the sexually explicit rule that they – Well, they said it promotes types of misconduct that is hazardous to some prisoners and weaker prisoners are dominated by stronger ones and a whole bunch of – whole litany of – That's correct. That actually I think kind of ties into the role-playing system. The role-playing was the domination issue. Well, that's involved there too, but what's wrong with their reasoning that it's better not to have that stuff going on inside the joint and have a quieter, more peaceful environment? I think that that makes sense, and I think that what is being challenged, what needs to be addressed are the rules themselves, that they're vague and overbroad, and the connection between – that there's no rational relationship between the rules and the magazines that were denied in what you're concerned with would result in qualified immunity if you believe that the rules were not clearly established. However, for declaratory and injunctive relief, we can look at separately – we can look at the rules themselves and the vagueness and the overbroad, and then again at the relationship between that and them as applied. So looking at the first-muscle elegance, as that seems to be what you're interested in, looking at that as applied, the portions of the magazines that were found to be violative were wrestling advertisements, and I think that that's something that's important to look at. If you're looking at wrestling advertisements, there's no logical connection, no logical nexus between that and the stated interests of having – prohibiting sexually explicit material because it might foster – Counsel, how about the advertisement that talked about experimental nude? I think that one in particular, it's an advertisement that is how to take pictures of nude bodybuilders, which is the whole basis of the magazine. So if you look at the magazine itself, which was not found to be violative, it makes no sense that an advertisement for how to take the same pictures that are in the magazine would somehow fall under that standard, and the rest of the magazine would not. So your argument is that there can be sexually explicit advertisements as long as the magazine itself isn't sexually explicit? Is that your argument? No, my argument is that the ads themselves are not sexually explicit within the rules and that there's no logical nexus between applying this rule and the basis for it to the actual application. Is it your position that there was no sexually explicit material in Muscle Elegance? Correct, and that was not found to be why the magazine was withheld. So that was also the department's view as well. Why was the magazine withheld in your view, then? Because they believed that those – it doesn't make sense to me, which is what we're arguing, but if I could get into the minds of the Department of Corrections, I don't even dare go there. We'll ask opposing counsel. Okay, so with regard to the White Dwarf magazine, I think it's important to understand what White Dwarf is and what it is not and explain why there's some of the confusion with the magazine. White Dwarf is a tabletop role-playing – or, excuse me, I missed that. It's a tabletop game that is similar to – I think you can look at Stratego or a game like that where you have two armies that are fighting against each other and they happen to be dwarves and goblins instead of the Confederate army and the army they're fighting against. So what the magazine – and then you paint those miniatures. So what the magazine actually is about is how to paint the miniatures and how to create the actual tabletop game and not about assuming – there's no gambling paraphernalia. It's not about assuming a role where you have domination over another person. It's basically a tabletop game. And I would like to reserve the remaining time for that. Thank you, counsel. May I please support Stephen Powers for defendants? The Supreme Court consistently has afforded substantial deference to prison officials in dealing with difficult and often delicate problems with prison management. This deference arises not because inmates check their constitutional rights at the prison gates but because the judiciary, in the Supreme Court's words, is ill-equipped to deal with the complex problems of prison management. To that end, there's the Fort Barth Turner test. And this is – this deference is especially pronounced when we're dealing with regulations with materials coming into prisons. In this case, we have the White Dwarf magazine and Muscle Elegance magazine. One was rejected. Muscle Elegance was rejected for violations of the sexually explicit rule. And that's in the supplemental excerpt of the record. Page 56. Counsel, I thought, of course, when counsel said that it was not the department's position that those advertisements were sexually explicit, you take issue with that representation? We do. There's an affidavit of Teresa Hicks. It's included in the supplemental excerpt of the record. It says that it was rejected because of the advertisement, sexually explicit advertisements throughout the magazine. Well, did that depict anything that was sexually explicit? The advertising? I'm sorry? Was something depicted that was sexually explicit in the advertising? Yes, there was. Would you tell us about it? It was in the sealed supplemental excerpt of the records, or in the – there was a wrestling move that was simulated sexual activity, and there was some graphic displays of naked bodies, and it was an illustration for a comic book of some sort. And it had sexually explicit material in there as well. It was those – it was the concerns that the DOC's interest in prohibiting this type of material is to reduce inmate violence, to reduce sexual misconduct. It interferes also with the inmates' rehabilitation because the concern is not just this plaintiff receiving this material, but it's that this material would be within the prisons. And as we have affidavits that also talk about that sexually explicit materials would be used as barter materials amongst the inmates, it's those concerns that underlie the sexually explicit policy. The DOC does not want that type of mail delivered to inmates. Counsel, would you address Post and Counsel's representation that, insofar as the role-playing issue is concerned, the Flight Dwarf magazine only instructed on how to paint the miniature figures? Again, a review of the documents, and one, I think the district court did review the as-applied challenge. In the district court's opinion, it says, one, I don't think they allege – that plaintiff alleged a constitutional challenge to the entire rule. And then secondly, I have reviewed the materials and find that they do contain the prohibitive conduct. And that's in the supplemental excerpt of the record again. What page? 26. And it does contain those – the prohibitive conduct. First, let me take a step backwards and talk about the DOC's interest in reducing this type of role-playing material in institutions. One, it reduces violence and power struggles. These role-playing and fantasy games create a fantasy world, a lawless world, where power is the primary objective, and it encourages killing, thievery, fighting. But primetime television does that, and they have TV in the institution. Some institutions do have television, and that is very true. But it's not to say that this is an exact fit or we're going to reduce all of violence by excluding fantasy and role-playing material. What the Turner test contemplates is that you look at what their interests are, reducing violence, reducing gambling paraphernalia, reducing – Pause on gambling. What was the evidence that these games, like the white dwarf games, what was the evidence that those games are used for gambling? There is an affidavit from the superintendent that talks about in playing these games, inmates would have used gambling materials. Do they bet on the outcome like they would on chicken fighting in more primitive prisons where they have cockfights? I'm sorry, I don't know. Well, do they bet on the outcome of these white dwarf-type games? They may or may not. What's the evidence on it? Just that in the superintendent's experience in running prisons, that inmates use these as a form of gambling or a form of coalescing in together and doing inmate-to-inmate victimization. And there can be some gambling around those sort of games. What's wrong with that gambling? Other than it offends somebody's moral sense of virtue, but I know of prisons in Micronesia where they have chicken fights all the time and they bet on them and the prisoners are rehabilitated and sent home. And in those prison officials' minds, that's acceptable and permissible. But in Department of Corrections' minds, reducing gambling helps the inmates and helps the security of the institution. Running prisons, obviously, is very difficult and encompasses an incredibly complex set of rules. When the judiciary starts wanting to weigh those rules and say, well, this gambling rule may or may not be a good thing. We know of other rules that happen. That's not what the Turner test contemplates. We want to make sure that as long as this role-playing rule matches up with security concerns, safety of the inmates and safety of Department of Corrections officials. Can you help me match up the security concern with the possibility of gambling in these games? You do. We do. What is the security connection? That having materials that increase gambling creates an unsafe environment for the other inmates towards victimization and inmate-to-inmate violence. Because if you have places where you are gambling and you are allowing that type of activity to occur, you're losing control over how you're running your institution. And that's what Lambert's affidavit discusses and talks about, is that we've decided that this is something that we don't want for a safe and secure prison. And I think as long as that matches up with it, then under Turner, the rule should be constitutional. Counsel, did the district court address the state constitutional issues? It did not. And I don't believe – I'm sorry, go on. If not, would it be appropriate to remand for consideration of those issues? I don't believe so. The district court granted qualified immunity. Under qualified immunity, that's talking about not suffering the burdens of the litigation. For federal causes of action. And how does that address the state causes of action? Well, I'm not sure that they were properly alleged below. In the cross motions for summary judgment, there was nothing about the plaintiff's state constitutional rights. Was it in the complaint, though? It was in the complaint. So is it your position that unless it's put in the summary judgment, it goes away? We believe that he waived it when he filed his motions for summary judgment, his motion for summary judgment, not responding to our request. But there can be partial motions for summary judgment? There can be. That's what our position is in it. Did you find any published opinions on these Dungeons and Dragons and games like that being dangerous to the prison? No, as far as I found – The only one we found was unpublished. Yeah, I found no published opinions on that. But, again, it's not what other jurisdictions have done. It's what are DOC's interest in this and reducing violence and power struggles and those things that are outlined in the affidavit. And then does that match up with what this rule is, reducing role-playing and fantasy game material? You do agree that there was a state claim that the court did not mention in its order? There was one in the complaint, as I recall, which is included, and the district court did not mention it. And do you agree that it was a proper supplemental claim? That I – no, I don't believe we do. We did not address it in our motion for summary judgment, as far as I recall. I'm not sure it was proper – could be before the district court in that. If you determine that it is – should be there, I think it should be remanded so that both parties have a chance to argue that. All right. Thank you, counsel. Rebuttal. Thank you, Your Honors. I would like to begin by addressing whether or not Mr. Barncore actually dropped his claims regarding the constitutionality. If I could just refer you to Supplemental Excerpts of Record S.E.R. 1, which is the complaint, and then the A.B.S.E.R., which are the appellant's Supplemental Excerpts of Record, pages 62 to 63 and 82 to 84. And he restates his claims on those pages, if I could refer you to those. I would agree with the Department of Corrections counsel that the state claims were not raised – or, sorry, that they were not addressed by the district court. They were raised in Mr. Barncore's initial complaint, and he did restate them in his response to the Department of Corrections motion for summary judgment. And he stated clearly, these are my claims that are before the court. His motions, as you correctly identify, were for partial summary judgment. And so there are still remaining issues that the district court did not address as to whether his Oregon State constitutional claim, whether there's improper training, and there were some additional issues that you can see on those pages. I would like to also address that there is deference that is given to prison institutions in making decisions. However, that deference is not absolute. There must be a rational relationship between the rule and the application, as well as between the rule and the state of penological interest, and those are not present here. For those reasons, we request that the court reverse the grant of summary judgment in favor of the Department of Corrections and that it remand with instructions to grant Barncore's partial motions for summary judgment, but for the as-applied, as well as his injunctive relief, and to remand as well the remaining issues that were not addressed. Thank you. Thank you, counsel. Counsel, on behalf of the court, we would like to thank you for accepting this case pro bono. Your efforts are much appreciated. Thank you very much. The case just argued is submitted. The next case on calendar for argument is Bollinger v. Oregon State Board of Parole. Thank you.
judges: Goodwin, Alarcon, Rawlinson